## ZOLLIKOFFER vs. BRIGGS, LACOSTE & CO.

APPEAL FROM THE COURT OF THE NINTH DISTRICT, FOR THE PARISH OF CONCORDIA, THE JUDGE THEREOF PRESIDING.

WESTERN DIS.
October, 1841.

ZOLLIKOFFER
vs.
BRIGGS,
LACOSTE & CO.

A slave held by a deed of trust or mortgage, which is not recorded in this State, to which the slave is removed, is liable to seizure by a creditor of the original owner.

Slaves held under a sale with the equity of redemption existing, are not liable to the seizure of a creditor of the original owner. He can seize only the equity of redemption.

This case commenced by injunction, The plaintiff alleges he is the owner of two slaves, named Sam and Eps, which he had conditionally sold in Mississippi, to A. & A. Clark, who failed to make payment, and he took them back and brought them to the Parish of Concordia, in Louisiana; and that he holds another slave named Manuel, under a deed of trust, from A. & A. Clark of Mississippi, which is also, with his other slaves in Concordia. He avers that the defendants have seized said slaves under a judgment they obtained against the Clarks, and as their property. He further alleges he has good and valid titles, and right to hold said slaves. He prays for injunction, and that they be decreed to belong to him.

The defendants pleaded the general issue, and prayed that the injunction be dissolved with damages, interest and costs.

Upon all the testimony adduced in support of the pretensions of the respective parties, there was judgment perpetuating the injunction, and confirming the plaintiff therein, in his title to the slaves. The defendants appealed.

*Farrar*, for the plaintiff.

*Stacy*, for the defendants and appellants.

*Bullard*, *J.* delivered the opinion of the court.

The plaintiff alleges that he is the owner of two slaves, *Sam* and *Eps*, having brought them to the State of Mississippi in September, 1836, with good and sufficient titles. That in Fe-

66    VOL. XIX.

WESTERN DIS
October, 1841.
──────────
ZOLLIKOFFER
vs.
BRIGGS,
LACOSTE & CO.

bruary, 1837, he agreed to sell them conditionally, to Angus Clark and Archibald Clark. That at the time of delivering said slaves, the Clarks executed a written agreement by which they bound themselves to deliver to him an accepted draft on some good solvent commission merchant, for about $3100, whereupon the petitioner was to make a good and valid bill of sale for said slaves, but in the failure to furnish the draft, the two slaves were to be delivered back to the petitioner. He alleges that the draft was never given, and no bill of sale ever executed. The petitioner further alleges, that on the 10th of January, 1839, the Clarks, at the request of the petitioner, delivered into his possession the said slaves *Eps* and *Sam*, and that he innocently and ignorantly destroyed the aforesaid written agreement, and in the hope and belief of confirming to himself the title to the aforesaid slaves, he obtained from the Clarks a bill of sale of the two slaves. That on the delivery of the slaves to him, on the 10th of January, 1839, he brought the slaves to the parish of Concordia, and put them upon a cotton plantation which he had rented. That afterwards he employed Angus Clark as overseer upon said plantation. He further represents that he has a lien or mortgage on a slave named Manuel, by virtue of a deed of trust executed in the State of Mississippi, on the 21st February, 1837, between Angus Clark, Archibald Clark and his wife, of the first part, John Stewart of the second part, as trustee, and the petitioner duly acknowledged before a justice of the peace and recorded in the office of the Probate Court. That the deed of trust was made to secure the payment of a promissory note for $6450, dated February 21, 1837, and payable on the first of November following, to the petitioner, which note is yet in his possession, and a great part of it yet unpaid. That on the same 10th of January, 1839, the Clarks delivered to him the negro Manuel, and that he removed him to the parish of Concordia with the others, that they remained in his possession on the plantation rented by him, from the time of their removal until March, 1840. He further represents, that notwithstand-

ing the premises, the sheriff of the parish of Concordia had seized and taken into his possession the said slaves, by virtue of a writ of attachment at the suit of Briggs, Lacoste & Co., against Angus Clark, and also on an order of seizure and sale. He therefore prays an injunction, which was accordingly granted. The defendants deny these allegations, and pray the dissolution of the injunction to stay proceedings on their judgment against Clark, and for damages,

WESTERN DIS.
October, 1841.

ZOLLIKOFFER.
vs.
BRIGGS,
LACOSTE & CO..

It appears that the defendants have a judgment which they recovered in the State of Mississippi, against Archibald and Angus Clark, and others, upon which they took out executory process here, and it was levied upon the three slaves in question. The only inquiry therefore is, whether Clark had such an interest in the slaves as could be seized in execution.

With respect to the slave *Manuel*, the plaintiff does not allege in his petition that he is the owner, but only that he has a lien or mortgage by deed of trust executed in Mississippi. It is not shown, nor even alleged that the evidence of this lien has ever been recorded in this State. Without such registry we have uniformly held, it cannot have effect in this State, against creditors. 8 Martin N. S. 222; 4 La. Rep. 42; 6 Idem 401.

A slave held by a deed of trust or mortgage, which is not recorded in this State, to which the slave is removed, is liable to seizure by a creditor of the original owner.

.The condition of the other two, *Eps* and *Sam*, is left rather equivocal by the evidence in the record. Archibald Clark was examined as a witness, and acknowledged that some of the slaves, at least which he had conveyed to Zollikoffer, were conveyed for the purpose of covering them from the pursuits of creditors, and particularly these defendants. The plaintiff alleges that he had sold those two slaves, but that not being paid for them, they were given back, and a written conveyance executed to him by the Clarks, and that deed is in the record, bearing date January 16, 1839. The evidence, and particularly the testimony of Archibald Clark shows that these two slaves in common with several more, were subject to be redeemed on the payment of the debt for which they were conveyed, about $10,000; and that a considerable part has.

WESTERN DIS.
October, 1841.

been paid. It is certain they were employed by one of the Clarks in raising a crop, the proceeds of which went to redeem the slaves, and in that way between five and six thousand dollars were paid. It appears to us therefore, that Clark, the judgment debtor, had such an interest in these slaves as might be attached or seized by his creditors. The equity of redemption in the slaves is clearly a property belonging to Clark which his creditors might seize, although Zollikoffer could not be disturbed in his possession until the slaves were entirely redeemed by a repayment of the price.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court so far as it relates to the slave *Manuel,* be avoided and reversed and the injunction dissolved: and that as to the two slaves, *Eps* and *Sam,* the injunction be maintained, and the said slaves be restored to the plaintiff's possession, without prejudice to the right of the defendants to seize the equity of redemption in said slaves, belonging to Clark, and that the defendants pay the costs of this appeal.